Statement of the Case.
BREAUX, C. J.
The National Automatic Alarm Company owned automatic fire alarm and signal boxes, and agreed with those by whom it was employed to keep an eye on defendants’ watchmen.
At the different places where the boxes are located on the employers’ premises, the watchman notified the company over its wires of his presence at his post of duty at certain designated hours of the night.
In the event of fire or of any other damage he, the watchman, makes use of the company’s instrument to give notice to plaintiff company, and thereupon the company gives notice to the fire department or to the police as the emergency may require.
The Automatic Fire Alarm Company entered into a contract with the New Orleans & Northeastern Railroad for the term of two years, for the sum of $292 a year, payable in advance, to perform the services of night watch signals and fire alarms in the manner before indicated.
On the 19th day of October, 1900, the superintendent of the New Orleans & Northeastern Railroad Company wrote to the Automatic Fire Alarm Company requesting the latter to commence with its work at the earliest possible date. The Automatic Fire Alarm Company complied with the request and performed the service required during the two years.
The railroad company, in advance each year, paid in full all due by it to the 2d day . of November, 1902.
No objection to a continuance of the service was raised at the date that the contract came to an end by limitation. Shortly thereafter the railroad company denied any inten *331 tion of renewing the contract, hut expressed its willingness to consider any proposition the Automatic Fire Alarm Company might submit with a view to further service for less money per year.
The first letter of the railroad company suggesting the wish to consider a new proposition was dated January 12, 1903.
On the 2d day of February, 1903, after having received a second communication from the railroad company (defendant), the Automatic Fire Alarm Company answered that they considered the old contract renewed for another term of two years.
The railroad company denied all renewal and informed the Automatic Fire Alarm Company on the 15th day of February, 1903, that unless the Automatic Fire Alarm Company called or communicated with the former, it must regard notice of their denial of renewal of the contract as notice, also that the Automatic Fire Alarm Company must remove its apparatus from the railroad’s premises.
This was followed by another letter dated the 31st day of March, 1903, notifying the company it must at once remove its apparatus. It was removed on that day.
The contention on the part of the Automatic Fire Alarm Company is that the railroad had continued in the use of the instruments and devices furnished by it after the expiration of the term provided by the lease, that this was done without disapproval and with the tacit consent of both parties, and that it was continued for some time before it was notified to cease to render services as before mentioned.
Immediately after, suit was filed claiming a tacit renewal for the entire two years at the same price and under the same conditions.
The railroad company controverts the allegations of the Automatic Fire Alarm Company.
There was judgment rendered in the district court in favor of the plaintiff, the Automatic Fire Alarm Company, for the sum of $121.66 and interest, the time the court found the Automatic Fire Alarm Company had rendered services. The court rejected the demand for any subsequent time thereafter.
From the judgment the railroad company appealed to the Court of Appeal.
The Automatic Fire Alarm Company answered the appeal and alleged that the judgment of the lower court should be increased from $121.66, with legal interest from judicial demand, to $584.
The judgment was annulled by the Court of Appeal.
The Automatic Fire Alarm Company filed an application to this court to have the judgment of the Court of Appeal decreed a nullity and for judgment on the contract, continued, as it contends, by tacit agreement and reconduction.
Opinion.
The agreement between the parties was in effect a lease. Both parties at the time the contract was entered into treated it as a lease or hire of services. The railroad company promised to pay annual rental for the services.
Moreover it has all the elements of a lease. There was a stipulated price, work to do, and services to render, and' the consent of lessor and lessee. It was a contract renewal by reconduction.
Tacit reconduction is founded on the presumption that the parties have formed a new lease similar to the preceding.
As relates to movables, tacit reconduction is continued for the time that the lessee has kept them with the consent of the lessor.
A contract for the hire of services may also be continued by reconduction.
By reference to the following case, on which plaintiff relies, it will appear that the employs had already done the work for *332 which the court held he was entitled to payment, so that in reality it does not bear directly upon future unearhed price for service.
Moreover the terms and conditions of the contract, it was stated, appeared to include the years during which the employé had rendered service. Sullivan v. New Orleans Stave & Heading Co., 44 La. Ann. 787, 11 South. 89.
In the second case, also referred to by plaintiff in argument, the court held that the defendant was justified in discharging plaintiff prior to the expiration of the term which otherwise was covered by reconduction.
With reference to the other point, reconduction, it was only' Incidentally iiassed upon in Lalande Case, 41 La. Ann. 307, 6 South. 28.
One of plaintiff’s contentions is that there can be no reconduction at all, for the reason that the property leased is movable and that there is no reeonduction as relates to hire of services.
If the appliances leased are movables, it, the res, is infinitesimally small as compared with the services rendered by plaintiff. We consider the question from the point of view that whatever be due is due for services rendered.
The reference in Baudry and others in defendants’ brief — Baudry, vol. 19, No. 1404 —relates to movable property, and not to work or service. As to hire of services, a number of French commentators hold that a special rule applies.
The following relates to hire of service: “Les serviteurs attaches a l’exploitation d’un fond rural sont a defaut de convention contraire censes loues pour 1’annee.” Pothier, n. 176; Duvergier, t. 2,287; Troplong, t. 2,361.
Again: “II parait que la tacite reconduction doit avoir lieu pour services des serviteurs, et des ouvriers.” Marcade, art. 1780, No. 3; Pothier, No. 372.; Baudry de Lacantinerie, vol. 2, p. 467.
The continuance of an obligation once established is presumed.
The burden was on defendant to show that plaintiff was discharged.
This is only shown by the letter of the 31st of March, 1903. Time to which price is due after expiration of contract.
In the case of the hire of services (where there is no question of custom) the services end at the will of either party.'
It is ordered, adjudged, and decreed that plaintiff have judgment for the amount decreed by the district court as due, viz., $121.-66, with legal interest from judicial demand, and to that extent the judgment of the district court is reinstated, and the case is remanded to that court for execution of the judgment.
The law and the evidence being with plaintiff, the judgment of the Court of Appeal is avoided, annulled, and reversed.
It is decreed that defendant pay all costs in the district court.
It is decreed that defendant and appellant pay all costs in the Court of Appeal, and that defendant also pay the cost of the writs of review and certiorari. .
It follows that the writ of certiorari and review are sustained to the extent before indicated.