311 So.2d 28 (1975)
Marion L. SIMMONS, Plaintiff-Appellant,
v.
WESTINGHOUSE ELECTRIC CORPORATION et al., Defendants-Appellees.
No. 12583.
Court of Appeal of Louisiana, Second Circuit.
April 1, 1975.
*29 Jerry L. Finley, Monroe, for appellant.
Hudson, Potts & Bernstein, through Jesse D. McDonald & W. Craig Henry, Monroe, for appellees.
Before BOLIN, PRICE, and HALL, JJ.
PRICE, Judge.
This is an appeal from the judgment of the district court sustaining a motion for summary judgment and rejecting the plaintiff's demands in a suit seeking reinstatement of employment, together with damages for unlawful discharge.
Marion L. Simmons brought this action against Westinghouse Electric Corporation and Jim Warren, alleging in his petition as a basis for recovery substantially as follows:
In July, 1969, Westinghouse purchased Poulan's Electrical Company in Monroe for which plaintiff had been employed since 1947. Westinghouse retained most of the twenty-seven employees of Poulan and represented their seniority rights would be continued and that no one would be discharged except for just cause. Should an employee be unable to perform a job classification of Westinghouse he would be given other suitable employment with the company. Jim Warren was sent to Monroe as manager of the plant and plaintiff accepted the job of foreman at a beginning salary of $850, which was increased periodically to $1,056.55 per month by December 8, 1971. On August 18, 1972, plaintiff was advised by Warren that he had orders to discharge him immediately for unsatisfactory performance as foreman.
Plaintiff alleges his termination was unlawful for the following reasons:
1. He had an agreement with Westinghouse that he would not be discharged except for good cause and if it was determined he was not suited for the position of plant foreman, he would be offered other suitable employment.
2. His termination was caused by the plant manager, Warren, reporting inaccurate information to higher company officials in regard to plaintiff's activities as foreman.
3. An underlying reason for his dismissal was the belief by Westinghouse officials that plaintiff was sympathetic with proponents of the effort to unionize the Monroe plant and his discharge for this reason is in violation of his constitutional and statutory rights.
In answer to plaintiff's allegations defendants allege plaintiff's employment was for an indefinite period and deny any agreement was made to guarantee him employment with the company. Defendants further allege plaintiff's employment was terminated because of his failure to follow instructions and refusal to implement company work procedures in the shop.
Defendants subsequently filed a motion for summary judgment, alleging there is no genuine issue of fact relating to the circumstances surrounding the discharge of plaintiff and that, as a matter of law, he has no basis for recovery because his employment was for an indefinite period, and *30 under such an agreement an employer may discharge an employee at any time with or without just cause.
In support of the motion, defendants filed an affidavit of Warren setting forth his knowledge of the reasons for discharge and the testimony of plaintiff given in response to a discovery deposition.
The trial judge found the defendants to have sufficiently established their position, that no real factual dispute was at issue and that plaintiff was not entitled to the relief claimed as a matter of law. We quote in part from the reasons for judgment his conclusions of evidentiary facts and the law applicable thereto:
"Reviewing of all evidentiary matter before the court reveals that there is no real dispute of evidentiary fact or any material issue. Plaintiff was employed by Poulan Electric Company as a shop worker in 1947 and was a working `shop foreman' there when Westinghouse bought Poulan in 1969. He was later made foreman, without any duties to perform actual labor in the shop, and was given several increases in salary. He was discharged on August 18, 1972.
"He contends that at the time of the sale, Poulan assured most employees they would be retained by Westinghouse; that officials of Westinghouse then had meetings to explain company policies and benefits at which he and others were told they had `job security'; that in other meetings and actions, including his promotion and salary increases, he was led to believe that he could work there as long as he desired unless he violated rules or performed unsatisfactorily; that he thus believed he had a permanent contract of employment terminable by him at will but by Westinghouse only for a `good cause.' Alternatively, he contends he was discharged in violation of federal labor laws because he was considered friendly to union efforts to organize the shop.
"The contentions by plaintiff are nothing more than unilateral conclusions and assumptions. The actual occurrences and facts, which are clearly shown without evidentiary contradiction, reveal that there was simply an oral contract of employment for an indefinite term as defined by our law, and such a contract is terminable at will by either party with or without cause. Civil Code Article 2747; Pitcher v. United Oil and Gas Syndicate, 174 La. 66, 139 So. 760; United Credit Co. v. Croswell Co., 219 La. 993, 54 So.2d 425; Manning v. Shreveport Transit Co., [La.App.,] 130 So.2d 497; Baker v. Union Tank Car Co., [La.App.,] 140 So.2d 397.
"The contention concerning the labor violation is equally untenable. The undisputed facts reveal that plaintiff was in a management or supervisory capacity as defined by the National Labor Relations Act (No. 29 U.S.C. 152). Such persons are not `employees' and not protected by the provisions of the act while engaged in `union activity.' It is of no legal moment, therefore, if plaintiff's assumption in regard to his discharge be correct, since Westinghouse was free to terminate his employment for any reason or no reason."
On this appeal plaintiff directs his specifications of error to the failure of the trial judge to find that there was a material fact at issue as to whether an agreement had been made allowing plaintiff's discharge only for good cause, and as to whether Warren had provided inaccurate information to Westinghouse officials precipitating the order for plaintiff's dismissal.
We pretermit for subsequent discussion the remaining specification relating to unfair labor practices.
We find the testimony of plaintiff in his deposition to amply support the conclusion reached by the trial judge that no genuine dispute exists surrounding the nature of *31 plaintiff's contract of employment. His understanding as reflected by his testimony in deposition is:
"A. Do you mean that they said that I could work there as long as I wanted to and all that?
"Q. Right. Did they make any representation to you like that?
"A. No, sir.
"Q. Would it be a fair statement to say that it was your understanding not by what any officials of Westinghouse told you at the time you were made foreman, but more, I suppose, by what they said beforehand when Westinghouse came in, maybe, too, because of the rules that were posted on the bulletin board that you felt as foreman that you could work for Westinghouse as long as you wanted to and as long as you were doing a good job and that Westinghouse would fire you only for good cause, is that a fair statement?
"A. Right."
It is readily apparent the oral contract of employment of plaintiff was for an indefinite period. Such a contract is terminable by either party at their pleasure. La.C.C. arts. 2747, 2748 and 2749. The reason for the rule is stated in Pitcher v. United Oil & Gas Syndicate, supra, by the Supreme Court:
"The reason for the distinction is obvious. An employee is never presumed to engage his services permanently, thereby cutting himself off from all chances of improving his condition; indeed, in this land of opportunity it would be against public policy and the spirit of our institutions that any man should thus handicap himself; and the law will presume almost juris et de jure that he did not so intend. And if the contract of employment be not binding on the employee for the whole term of such employment, then it cannot be binding upon the employer; there would be lack of "mutuality."
Any promise or agreement that plaintiff would have permanent employment requiring good cause for his termination must be supported by some special consideration given by him over and above the rendering of his services. Pitcher v. United Oil & Gas Syndicate, supra. No such special consideration is alleged or urged by plaintiff.
The relief sought by plaintiff under his pleadings is for a breach of the alleged contract of employment. There are no factual pleadings which sustain his argument in brief to this court that there is a genuine issue of fact in regard to whether defendant Warren may be liable for libel and slander for allegedly relaying inaccurate information to higher echelon Westinghouse officials, causing plaintiff's discharge.
We have some doubts that plaintiff has a remedy in a state court for the relief sought for alleged violations of the National Labor Relations Act. Defendants cite the decision in San Diego Building Trades Council v. Garmon, 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959) as precluding any consideration of this issue by the state court and urges plaintiff's sole remedy for the relief of reinstatement and loss of wages resulting from the unfair labor practices alleged by him is by complaint to the National Labor Relations "Board. If this position is correct, the result reached by the trial judge, although for different reasons, is proper.
However, even if a state court does have jurisdiction to adjudicate a claim such as that advanced by plaintiff, such an adjudication was made by the trial judge, and we find his conclusions to be in accord with the facts established by the record.
Plaintiff's duties, authority and responsibilities as foreman are fully described by him in his deposition. There is no genuine *32 issue of fact in regard to the description of his job function and duties.
There is no error in the trial judge's finding that plaintiff's position was supervisory in nature as defined in 29 U.S.C.A., Sec. 152, and that he was therefore not afforded the protection of the act.
For the foregoing reasons the judgment appealed from is affirmed at appellant's cost.