JjGREMILLION, Judge.
In this case, the plaintiff, Linda “Millie” Seals entered into an employment contract with the defendant, Calcasieu Parish Voluntary Council on Aging, Inc. (CCOA). The contract provided for an initial period and successive options for additional time at Seal’s discretion. The trial court granted CCOA’s motion for summary judgment finding that the contract constituted a contract of permanent employment and, as such, was null and void. For the following reasons, we reverse and remand for further proceedings.
FACTS
On June 16, 1993, after eleven years of employment without a contract, Seals and CCOA formalized their working arrangement with the creation of an employment contract. The contract provided that Seals would continue in the position of Executive Director, a position she had held since July 1, 1982. According to the contract, CCOA could terminate Seals’ employment only after a showing of just cause band on no less than thirty days notice. Further, the contract allowed Seals to terminate her employment with thirty days notice. The initial term of the contract was ten years and gave Seals successive one to ten year options for renewal or until terminated.
Pursuant to forty-eight assertions CCOA felt constituted just cause, Seals’ contract of employment was terminated. This lawsuit followed against CCOA and individual members of its Board of Di *288 rectors. Subsequently, CCOA filed a motion for summary judgment claiming that Seals’ employment contract was that of permanent employment and, as such, was terminable at will without the necessity of showing just cause. The trial court granted the motion.
Seals now appeals claiming that the trial court committed legal error in concluding the following: 1) that the use of the word “permanent,” as written in paragraph one, in a written employment contract proves that the parties intended the contract to be one of unspecified duration; 2) that a written employment contract, specifying an initial, definite term and allowing renewals thereafter, is a contract for permanent employment prohibited by Louisiana jurisprudence; 3) that a written employment contract is null and void and unenforceable when the contract allows an employee to terminate her employment upon giving thirty days notice, yet requires the employer to employ for a specific period allowing termination by the employer only for just cause; and 4) that special “consideration” must be given for an employment contract to be enforceable when the written contract specifies an initial, definite term of employment, allowing for renewals thereafter, and when the contract allows the employee to terminate upon giving thirty days notice while the employer may not terminate but for cause.
At issue in this case are the legal interpretations of paragraphs “1” and |s“9” of Seals’ employment contract. The paragraphs read as follows:
1. EMPLOYER hereby employs EMPLOYEE to perform the duties of Executive Director for the organization on a permanent basis. EMPLOYEE will assume the duties she has performed for EMPLOYER since July 1, 1982.
9. EMPLOYER may terminate this contract only after showing just cause, upon no less than thirty (30) days written notice to EMPLOYEE. EMPLOYEE shall have the right to terminate this contract upon thirty days notice to EMPLOYER. EMPLOYER agrees that the initial term of this contract is for a period of ten (10) years, with EMPLOYEE given the right to exercise successive options for renewals of from one to ten years, at no expense to EMPLOYEE.
SUMMARY JUDGMENT
 We review summary judgments de novo applying the same standard of review used by the trial courts in rendering judgments at the trial court level. Schroeder v. Board of Supervisors of Louisiana State Univ., 591 So.2d 342 (La.1991). The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action. La. Code Civ.P. art. 966(A)(2). This procedure is favored and shall be construed to accomplish these ends. Id. Summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law. La.Code Civ.P. art. 966(B). If the adverse party fails to produce factual support sufficient to establish that she will be able to satisfy her evidentiary burden of proof at trial, there is no genuine issue of material fact and the motion shall be granted. Hayes v. Autin, 96-287 (La.App. 3 Cir. 12/26/96); 685 So.2d 691. However, the burden of proof remains with the movant. La.Code Civ.P. art. 966(C)(2).
ASSIGNMENTS OF ERROR
|4In Seals’ assignments of error, she raises several issues. First, we shall consider whether, in interpreting the contract, the trial court relied on the word “permanent” in paragraph “1” in determining whether the contract was one of permanent employment. Next, we will consider whether the successive options in the contract render it null and void. Then, we shall address the issue of mutuality be *289 tween the parties. Finally, based on our finding on the first three issues, we will consider the good faith owed by Seals under the contract.

Interpreting the Contract

Seals contends that the trial court determined the word “permanent” as used in paragraph “1” of the employment contract at issue, “prov[ed] that the parties intended the contract to be one of unspecified duration.” The contract as a whole must be considered in interpreting each provision. La.Civ.Code art.2050. “When the words of the contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties’ intent.” La. Civ.Code art.2046. To ascertain and, thereby, effectuate the common intent of the parties to a contract, the trial court should examine each provision of the contract in light of its other provisions so that each is given the meaning suggested by the contract as a whole. La. Civ. Code art. 2050.
There are two types of contracts for hire: terminable at will and limited duration. Brodhead v. Board of Trustees for State Colleges and Univs., 588 So.2d 748 (La.App. 1 Cir.1991), writ denied, 590 So.2d 597 (La.1992). In Pitcher v. United Oil Gas Syndicate, 174 La. 66, 139 So. 760 (1932), the court recognized a third type, that of indefinite duration, when certain requirements are met. A contract is terminable at will when an employer is at liberty to dismiss an employee without assigning any | sreason for doing so, and the employee may terminate her employment without assigning any cause. La.Civ.Code art. 2747. Under a limited duration contract, an employee can only hire out her services for certain limited time or for the performance of a certain enterprise. La. Civ.Code art. 2746. Permanent contracts of employment are generally against public policy.
An employee is never presumed to engage his services permanently, thereby cutting himself off from all chances of improving his condition; indeed, in this land of opportunity it would be against public policy and the spirit of our institutions that any man should thus handicap himself; and the law will presume almost juris et de jure that he did not so intend.
Id. at 69,139 So. at 761.
However, a contract of indefinite duration will be upheld when the employee gives “special consideration,” in addition to the services he has promised to perform.
[I]f the employee has given, in addition to the services which he promised to perform, a consideration, whatever the nature of such consideration be, then he has in effect purchased, for valuable consideration, an option to keep the employment from the term specified; and such a contract is a valid one.

Id.

The trial court, in its written opinion, refers to the word “permanent” not only in the context of the first paragraph of the employment contract but also as it is used in Pitcher. The trial court cites Pitcher for the proposition that, absent some consideration given by the employee in addition to her services, a contract of permanent employment is against public policy and is terminable at the will of either party.
The trial court considered Seals’ right to successive options to renew her contract, in conjunction with the use of the word “permanent” in paragraph “1” of the contract, as its basis for determining the contract was that of permanent employment. | inhere is nothing in the record indicating that the trial court read the word “permanent” in paragraph “1” to be dispositive of the issue of whether the contract at issue is perpetual. It is clear that the trial court considered the contract in light of all its provisions in determining that the contract was one of permanent employment and did not simply rely on the word “permanent” in paragraph “1” for that purpose.

*290
Successive Options

We will now consider whether the contract is permanent because it provides Seals with successive options to continue her employment. The trial court essentially read the successive options in the contract as creating a perpetual employment obligation and the lack of any “special consideration” as a basis for finding the contract unenforceable. Additionally, the trial court found that the absence of any consideration given CCOA by Seals in exchange for the thirty day notice option created a lack of mutuality which was also a basis for it finding the contract null. In its reasons for judgment, the trial court wrote:
Employee had permanent employment, so defined in the contract, and delivered by giving her the sole option to continually renew same whereas, employer could terminate only after showing just cause. Further, employee at her complete discretion, could terminate for any reason or for no reason, simply by giving 30 days notice. No special consideration exists other than services given by employee. Consequently, this fits the prohibited “permanence” of Pitcher. Absent special considerations, it must be viewed as terminable “at will”. Mutuality is further impaired since employer is the only one really bound by the contract.
We will first address the question of the successive options. “An obligation is divisible when the object of the performance is susceptible of division.” La.Civ. Code art. 1815. “An obligation is indivisible when the object of the performance, because of its nature or because of the intention of the parties, is notLsusceptible of division.” Id. Legal agreements have the effect of law between the parties, and the parties shall be held to full performance of the obligations flowing therefrom. Natali v. Froeba, 98-1354 (La.App. 3 Cir. 3/3/99); 735 So.2d 30. The meaning and intent of the parties to a contract must be sought within the four corners of the document itself, and the use of extrinsic evidence is proper only when the content of the contract is found to be ambiguous after examination of the document itself. La.Civ.Code art. 1848. A court may not make a new contract for the parties when the contract is expressed with sufficient clearness to convey the plain meaning of the parties. Id. at 34.
We read Seals’ employment contract to be for the initial ten-year period, as stated expressly in the contract, and find the successive options unenforceable. The contract reads, “EMPLOYER agrees that the initial term of this contract is for a period of ten (10) years.” This case is distinguishable from the Pitcher case on which the trial court relied. In Pitcher, 174 La. at 66, 139 So. at 761, the plaintiff was employed as a field manager under a written contract with a clause providing that “this contract of employment is to continue as long as said company is operating.” During the period of the contract and while the defendant was still operating, the plaintiff was discharged without cause. The plaintiff filed suit claiming that his employer had breached his employment contract. The court explained: “It is not disputed that if the contract, as above written, was only for an indefinite and not for some fixed or readily ascertainable period, then it might be terminated at the will of either party.” Id. at 67, 139 So. at 761. (Emphasis added). But cf. Russell v. White Oil Corp., 162 La. 9, 110 So. 70 (1926).
In the case sub judice, the parties entered into a contract with an initial | sterm of ten years with options to follow. To view Seals’ contract as similar to that of Pitcher is to read out of her contract the express agreement that “the initial tern of this contract is for a period of ten (10) years.” (Emphasis added). As pointed out by CCOA, the Pitcher court looked to see if there was some fixed or readily ascertainable period of employment and, since there was none, found the plaintiffs employment to be against public policy *291 and, as such, to be merely “at will.” The case at bar has a fixed and readily ascertainable period of employment, that of ten years.
In Lowther v. Fireside Mutual Life Insurance, 228 La. 946, 84 So.2d 596 (1955), the plaintiff sued his former employer for breach of an employment contract which renewed itself automatically on a yearly basis. At the time. of his suit, five years had lapsed since the formation of the contract. The court found that plaintiff failed to state a cause of action because the contract was for an indefinite term and rejected the plaintiffs requested relief because former La.Civ.Code art. 167 prohibited employment contracts exceeding five years. The court did not render the entirety of the contract null, but rather, refused to enforce the contract beyond the five-year limitation of Article 167.
In Brannan v. Wyeth Labs., Inc., 526 So.2d 1101 (La.1988), a pharmaceutical salesman, who had been employed for eighteen years by the defendant employer, claimed he had a permanent position until he retired. The supreme court held:
The present case involves a situation in which, even if the relationship between the parties could be construed as an oral contract of employment, the ten year term provided for in art. 167 has run, and the contract is terminable at will. Plaintiff had been employed by defendant for eighteen years at the time of his termination; leaving a civil service job to take a higher paying job is not “consideration” as required in Pitcher.
|9In addition, defendant established just cause for termination under the circumstance of this case.
Id. at 1104.
The court in Brannan seemingly upheld the employment contract for as long as the existing law would allow. It was only after finding that the ten year term provided by La.Civ.Code art. 167[1] had expired that the court held that the contract was terminable at will.
Additionally,' the options in Seals’ contract are of no consequence until the initial ten-year employment term has run. Seals has a ten-year employment commitment followed by successive offers to continue that employment. In Pitcher, 174 La. at 69, 139 So. 760 761, the court wrote “[a]n employee is never presumed to engage his services permanently, thereby cutting himself off from all chances of improving his condition .... it would be against public policy and the spirit of our institutions that any man should thus handicap himself.” (Emphasis added). In the case at bar, after the initial ten-year period, Seals could terminate her employment obligation by not exercising the options.
Using the same reasoning of the cases discussed above, we conclude that the trial court erred in granting summary judgment on this issue, and further find that once the initial term of Seals’ contract expires, the contract will revert to that of employment at will.

Mutuality

“A contract is an agreement by two or more parties whereby obligations |inare created, modified, or. extinguished.” La.Civ.Code art.1906. “Cause is the reason a party obligates himself.” La. Civ. Code art.1967. “A party may be obligated by a promise when he knew or should have known that the promise would induce the other party to rely on it to his detriment and the other party was reasonable in so relying.” La.Civ.Code art.1967. “An obligation cannot exist without lawful cause.” La.Civ.Code art.1966. La.Civ.Code art. 1971 provides that “[p]arties are free to contract for any object that is lawful, possible, and determined or determinable.”
We will now consider whether the ability of Seals to terminate her contract by giving thirty days notice makes the contract invalid and unenforceable. The Pitcher *292 court wrote “if the contract of employment be not binding on the employee for the whole term of such employment, then it cannot be binding upon the employer; there would be lack of ‘mutuality’.” Id. at 69, 189 So. at 761. Relying on this language, the trial court found Seals’ contract lacked mutuality.
In the contract at hand, Seals had the advantage of being able to terminate her employment upon giving thirty days notice, but CCOA obligated itself to discharge Seals only for just cause. Also incorporated in the contract were other provisions which provided for salary, work hours, vacation, sick leave, medical insurance coverage, and the reimbursement of out-of-pocket expenses. It is clear from the contract that Seals bargained for and received substantial benefits for the performance of her duties as Executive Director.
A similar contract of employment was reviewed by the Louisiana Supreme Court in Long v. Foster & Associates, Inc., 242 La. 295, 136 So.2d 48 (1961). In Long, the parties confected an employment contract that guaranteed the employee employment for a period of five years. As part of the contract, the In employee reserved the privilege to cancel the agreement at any time upon giving two weeks notice. The employer reserved the right to cancel the contract if a union was certified and recognized as the bargaining agent for the employees. The supreme court reversed the trial court’s and appellate court’s decisions granting the employer’s exception of no cause of action finding that the contract was not invalid and unenforceable simply because it contained the potestative condition allowing the employee to terminate the contract upon giving two weeks notice. In doing so, the supreme court stated, “ the obligations in an employment contract are reciprocal, i.e., the letting out of services for remuneration; additional covenants or promises by either one or the other party are merely a part of the moving consideration or inducement for making the contract.” Id. at 305, 136 So.2d at 51. The court further said, “both parties (so long as [the contract] remained in effect) had reciprocal duties to perform — the employee to work and the employer to pay his salary.” Id.
In explaining the situation that existed in Long, the supreme court also said:
This employee merely asserts: there exists a valid and binding contract, under the terms of which both parties have definite and reciprocal obligations to discharge (the rendering of services and the payment of wages) until such time as I exercise the cancellation option granted to me as part of the moving consideration for executing the agreement. If and when I exercise that option neither party is bound any longer.

Id.

The court, relying on Article 1764[2] of the Civil Code, as it existed at that time, drew Lathe following conclusions:
*293 Again, the incidental stipulations contained in the instant agreement, which undoubtedly served as inducements for making the contract (such as plaintiffs cancellation option on giving two weeks’ notice), were effective and binding since it has not been contended that any were violative of law or public policy. In this connection, as was indicated in the Martin-Parry opinion, an employment contract cannot be divided into various incidental covenants and sustained only on a finding of a reciprocal consideration for each stipulation. Unless covenants of that nature are considered as being merely part of the moving causes or inducements for making the contract almost none of today’s complicated agreements, either in the field of labor or elsewhere, could stand the test of mutuality as urged by this defendant. In fact, in the very contract before us there is a stipulation that the employer will pay to the employee his salary, up to a period of two weeks, when he is ill and unable to perform. But there appears no reciprocal covenant on the part of the employee to work for nothing if the employer should experience financial difficulties and become unable to pay wages. (Emphasis added).
Too, often a contract contains a clause relieving the employer of his obligation to pay in the event of union involvement, as indeed does the instant one. Can it be said that such a clause, as well as the entire contract in which it is found, is invalid because of lack of mutuality? We think not. Rather the agreement is to be considered in its entirety; and all incidental stipulations, when not offensive to law and public policy, must be given effect.
Id. at 308-09, 136 So.2d at 52 (emphasis added).
| ^Articles 1761 through 2291 of the Civil Code were amended and reenacted by Acts 1984, No. 331 § 1. Article 1764 was not reenacted. For provisions on the motives and subject of contracts, one must now look to Articles 1906 et seq. Initially, we note that “cause” is the reason why a party obligates himself. La.Civ. Code 1967. This article changed the law in two ways. First, it defined cause in terms of “reason,” rather than motive, for the purpose of enhancing the importance of judicial discretion in characterizing an obligation as enforceable. Second, it incorporated detrimental reliance as an additional ground for enforceability. See Comment (a) to Article 1967. Further, Comment (c) to Article 1967 states, “The reason why a party binds himself need not be to obtain something in return or to secure an advantage for himself. An obli-gor may bind himself by a gratuitous contract, that is, he may obligate himself the benefit of the other party without obtaining any advantage in return.”
We know of no law, public policy, or other impediment which prevented Seals and CCOA from agreeing to allow Seals to terminate her employment upon giving thirty days notice while CCOA can only terminate her employment on showing just cause. We find that, just as in Long, the privilege to terminate her employment by giving thirty days notice was an inducement for Seals to continue her employment as Executive Director as were the other emoluments of her employment. That agreement forms but a part of the entire contract, all of which were reasons for incurring the obligation that Seals would work for CCOA and CCOA would pay her for her labor. If and when Seals terminates her employment upon giving thirty days notice, CCOA would no longer be required to pay her.

*294
Good Faith

|uIf a condition shows on its face that an obligor may or may not fulfill her obligation as per her desire, then the obligation is null; but if the condition imposes on the obligor a duty of making a sincere effort to fulfill the obligation, then the fact that the obligor is in a position to hinder or prevent execution of the contract does not make the contract null. La.Civ. Code arts.2024, 2034, 2035; Franks v. Louisiana Health Servs. & Indem. Co., 382 So.2d 1064 (La.App. 2 Cir.1980). La. Civ.Code art. 1767 provides:
A conditional obligation is one dependent on an uncertain event.
If the obligation may not be enforced until the uncertain event occurs, the condition is suspensive.
If the obligation may be immediately enforced but will come to an end when the uncertain event occurs, the condition is resolutory.
“A resolutory condition that depends solely on the will of the obligor must be fulfilled in good faith.” La.Civ.Code art. 1770. In Comment (d) to Article 1770, the commentator, relying on Long v. Foster, writes, “An event is not left to obligor’s whim when it is one that he may or may not bring about after a considered weighing of interests.” The commentator also writes in Comment (f) the following:
In modern law, the enforceability of termination clauses often depends upon whether a party attempts to avail itself of the clause before or after performance has started. In the latter situation, the clause is recognized as valid and is enforced; in the former there is a violation of the overriding obligation of good faith and, therefore, a breach of contract.
Further comments to Article 1770 shed light on the obligation of good faith. “In order to comply with the requirement of good faith, a party exercising his right to terminate a contract at will should consider not only his own advantage, but also the hardship to which the other party will be subjected because of the termination.” La.Civ.Code [isart. 1770, Comment (f).
In this case, Seals is obliged to perform work under the contract. In that sense, she is the obligor. Since she may terminate the obligation to work upon giving thirty days notice, the obligation is conditional. Because the obligation to work could have been immediately enforced upon execution of the contract (and, in fact, was enforced), but could come to an end upon the occurrence of an uncertain event (Seals’ decision to terminate her employment), the condition is resolutory. Because the resolutory condition, that of terminating her employment upon giving thirty days notice, rests solely with Seals, it must be fulfilled in good faith. “In order to comply with the requirement of good faith, a party exercising his right to terminate a contract at will should consider not only his own advantage, but also the hardship to which the other party will be subjected because of the termination.” La.Civ.Code art. 1770 Comment (f). Therefore, CCOA, in bargaining for Seals’ services, agreed to the condition that she could terminate her employment upon giving thirty days notice and received in return the obligation from Seals that she would continue to work and exercise that privilege only in good faith. Accordingly, we find that the termination clause in question does not, in and of itself, render the contract unenforceable.
CONCLUSION
For the aforediscussed reasons, the judgment of the trial court is reversed and Seals’ suit is remanded for a just cause determination. The costs of this appeal are assessed to defendant-appellee Calca-sieu Parish Voluntary Council On Aging, Inc.
REVERSED AND REMANDED.

. Article 167 forbade persons who had attained the age of majority from binding themselves to employment for a term longer than ten years.

. La.Civ.Code art. 1764 read in part:
A. All things that are not forbidden by law, may legally become the subject of, or the motive for contracts; but different agreements are governed by different rules, adapted to the nature of each contract, to distinguish which it is necessary in every contract to consider:
1. That which is the essence of the contract, for the want whereof there is either no contract at all, or a contract of another description. Thus a price is essential to the contract of sale; if there be none, it is either no contract, or if the consideration be other property, it is an exchange.
2. Things which, although not essential to the contract, yet are implied from the nature of such agreement, if no stipulation be made respecting them, but which the parties may expressly modify or renounce, without destroying the contract or changing its description; of this nature is warranty, which is implied in every sale, but which may be modified or renounced, without changing the character of the contract or destroying its effect.
3. Accidental stipulations, which belong neither to the essence nor the nature of the contract, but depend solely on the will of the parties. The term given for the payment of a loan, the place at which it is to be paid, and *293 the nature of the rent payable on a lease, are examples of accidental stipulations.
What belongs to the essence and to the nature of each particular description of contract, is determined by the law defining such contracts; accidental stipulations depend on the will of the parties, regulated by the general rules applying to all contracts.